IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARIA M., | * |
| Plaintiff, | * |
| vs. | *    Civil Action No. ADC-20-1927 |
| KILOLO KIJAKAZI,<br>Acting Commissioner,<br>Social Security Administration | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

On June 28, 2020, Maria M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits under Title II of the Social Security Act ("the Act"). ECF No. 1 ("the Complaint"). Plaintiff and Defendant filed motions for summary judgment (ECF Nos. 17, 22) on April 2, 2021 and August 11, 2021, respectively.[1] After consideration of the Complaint and the parties' motions, the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 17) is GRANTED, Defendant's Motion for Summary Judgment (ECF No. 22) is DENIED, the SSA's decision is REVERSED, and the case is REMANDED to the SSA for further analysis in accordance with this Opinion.

---

[1] On September 30, 2021, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings. ECF Nos. 4, 7.

1

**PROCEDURAL HISTORY**

On January 23, 2017, Plaintiff filed a Title II application for Disability Insurance Benefits, alleging disability since January 2, 2017. ECF No. 13 at 21. Her claim was denied initially on April 13, 2017. *Id.* Subsequently, on May 3, 2017, Plaintiff filed a written request for a hearing, and on March 28, 2019, an Administrative Law Judge ("ALJ") presided over a hearing. *Id.* On May 24, 2019, the ALJ rendered a decision ruling that Plaintiff was not disabled under the Act. *Id.* at 22. Plaintiff requested a review of the ALJ's determination, which the Appeals Council denied on May 12, 2020. *Id.* at 1. Thus, the ALJ's decision became the final decision of the SSA. *See* 20 C.F.R. § 416.1481; *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). On June 28, 2020, Plaintiff then filed the Complaint in this Court seeking judicial review of the SSA's denial of her disability application. ECF No. 1.

**STANDARD OF REVIEW**

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential: "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."). The issue before the reviewing Court then is whether the ALJ's finding of nondisability is supported by substantial evidence and based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal

2

standards and the ALJ's factual findings are supported by substantial evidence." (citations omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citations omitted). In a substantial evidence review, the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the Court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for Disability Insurance Benefits, a claimant must establish that she is under disability within the meaning of the Act. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. § 404.1520; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), (b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of

the analysis. 20 C.F.R. § 404.1520(e). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must then evaluate the extent to which the symptoms limit the claimant's capacity to work. *Id.* § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id.* § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. *See generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *3. However, the ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not differentiate them." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016) (citations omitted)). Requiring objective medical evidence to support a plaintiff's subjective evidence of pain "improperly increases [Plaintiff's] burden of proof." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017).

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), (e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. Claimant has the burden of proof during steps one through four of the evaluation. *See* 20 C.F.R. § 404.1520; *Radford*, 734 F.3d at 291. However, the burden of proof shifts to the ALJ at step five to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC, and (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *see Hancock*, 667 F.3d at 472–73. If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1), 404.1560(c). If the claimant cannot perform other work, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## ALJ DETERMINATION

The ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 2, 2017. ECF No. 13 at 23. At step two, the ALJ found that Plaintiff had severe impairments of pulmonary hypertension, essential hypertension, asthma, obstructive sleep apnea, major depressive disorder, and generalized anxiety disorder. *Id.* at 24. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step four, the ALJ determined that Plaintiff had the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ladders, ropes, or scaffolds, and can

>occasionally be exposed to unprotected heights and moving machinery parts. She can have occasional exposure to dust, noxious odors and fumes, poor ventilation, extreme cold, and wetness. She can understand and remember simple instructions, make simple work-related decisions, carry out simple instructions, can occasionally deal with changes in a routine work setting, and can occasionally deal with coworkers and the public.

*Id.* at 26. The ALJ then found that Plaintiff was unable to perform any past relevant work. *Id.* at 28. Finally, at step five, the ALJ found that there were "jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," after considering Plaintiff's age, education, work experience, and RFC. *Id.* at 29. Thus, the ALJ concluded that Plaintiff "has not been under a disability, as defined in [the Act]" from January 2, 2017 through May 24, 2019, the date of the ALJ's decision. *Id.* at 30.

## DISCUSSION

Plaintiff raises three arguments on appeal: (1) the ALJ failed to properly evaluate whether her impairments met or medically equaled the criteria of Listing 3.09 at step three; (2) the ALJ failed to account for her moderate difficulties in concentration, persistence, or pace in his RFC determination or explain why adding the limitation was not necessary; and (3) the ALJ's RFC was not supported by substantial evidence. I find that Plaintiff's arguments are meritorious and address each below.

### A. The ALJ failed to properly determine whether Plaintiff's impairment met or medically equaled the Listing 3.09 criteria.

Plaintiff first argues that the ALJ failed to properly assess whether her impairments met or medically equaled the Listing 3.09 criteria. ECF No. 17-2 at 9. At step three of the sequential evaluation, the ALJ must determine whether Plaintiff's impairments meet or medically equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Plaintiff is entitled to a

7

conclusive presumption that she is disabled within the meaning of the Act where she can show that her condition "meets or equals the listed impairments." *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability"). Plaintiff bears the burden of proof to show she meets *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). Because "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citations omitted).

"If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* at 295 (citations omitted); *see Fox v. Colvin*, 632 F.App'x. 750, 755–56 (4th Cir. 2015) (holding that the ALJ's conclusory and perfunctory step three analysis necessitated remand). In evaluating whether an ALJ's listing comparison was proper, however, the Court may consider the ALJ's discussion of medical evidence "relevant to the Step Three analysis" located "elsewhere in the ALJ's opinion." *See Schoofield v. Barnhart*, 220 F.Supp.2d 512, 522 (D.Md.

8

2002) (holding that remand was not warranted where the record showed clearly which Listing was considered and an equivalent discussion of the evidence was found elsewhere in the opinion).

Listing 3.09 refers to chronic pulmonary hypertension due to any cause. 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.09. The condition is "documented by mean pulmonary artery pressure equal to or greater than 40 mm Hg as determined by cardiac catheterization while medically stable." *Id.* Plaintiff identifies two cardiac catheterization records that confirm she had a mean pulmonary artery pressure of greater than 40 mm Hg. ECF No. 17-2 at 15–16; ECF No. 13 at 624, 682, 860, 864. However, the ALJ's assessment at step three merely states that he considered Plaintiff's respiratory impairments according to Listing 3.09 and concluded that "the evidence does not show the requisite . . . pulmonary artery pressure level." *Id.* at 24. The ALJ did identify evidence of Plaintiff's elevated pulmonary artery pressure in describing her RFC, but he did not identify the mean. *Id.* at 27.

Plaintiff's argument is compelling given the ALJ's minimal explanation. Despite medical evidence in the record that Plaintiff had the requisite pulmonary artery pressure to meet the requirements of Listing 3.09, the ALJ stated that no such evidence existed. Because the ALJ failed to apply the listing requirement to the medical record, remand is appropriate. *See Radford*, 734 F.3d at 295. The ALJ's conclusion is directly contrary to the record, stating that "the evidence does not show the requisite . . . pulmonary artery pressure level," ECF No. 13 at 24, when, in fact, the medical record shows that Plaintiff had a pulmonary artery pressure level above 40 mm Hg on February 1, 2017 and October 26, 2017. *Id.* at 624, 682, 860, 864. While the ALJ acknowledged these elevated levels in his consideration of the RFC, he provided no such explanation for why they were not considered in his Listing 3.09 analysis. *See id.* at 27.

Defendant asserts that the ALJ properly found that Plaintiff's impairments did not meet or equal the severity of Listing 3.09 because Plaintiff failed to prove she was medically stable during the testing. ECF No. 22-1 at 6. However, even if the ALJ considered other evidence in the record to conclude Plaintiff was not medically stable during the cardiac catheterizations, he provided no such explanation in his decision. Reviewing such evidence is a "necessary predicate" to a substantial evidence review by this Court. *See Radford*, 734 F.3d at 295. If the ALJ concluded that such evidence existed that Plaintiff's impairments did not meet the Listing 3.09 requirements, then he should have so identified. As such, the Court is unable to determine that the ALJ's decision is supported by substantial evidence, and remand is warranted.

B. The ALJ's RFC is not supported by substantial evidence.

I review Plaintiff's next two RFC arguments together. Plaintiff first contends that, while the ALJ found she had moderate difficulties in concentration, persistence, or pace, he failed to either include a corresponding limitation in her RFC or explain why a limitation is not necessary. ECF No. 17-2 at 20. Plaintiff contends this is in violation of the United States Court of Appeals for the Fourth Circuit's decision in *Mascio v. Colvin*. *Id.* And second, Plaintiff asserts that the RFC was not supported by substantial evidence because the ALJ failed to perform a function-by-function analysis of her ability to perform the functions under 20 C.F.R. § 416.945(b), and his conclusion was at odds with her alleged limitations. *Id.* at 27.

In determining RFC specifically, an ALJ must consider the entire record, including opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. § 404.1545(a) (ordering the ALJ to consider the entire record); SSR 96-8p, 1996 WL 374184, at *1 (defining the RFC as an assessment of an individual's ability to perform vocational-related

physical and mental activities). "The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

Social Security Ruling ("SSR") 96-8p provides the proper framework for evaluating Plaintiff's RFC. Specifically, the Ruling states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). "[T]he [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess [her] work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after that may [RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Mascio*, 780 F.3d at 636 (footnote and citation omitted) (quoting SSR 96-8p, 1996 WL 374184). The Fourth Circuit, however, found that a per se rule requiring remand is inappropriate simply because an ALJ does not perform "an explicit function-by-function analysis," explaining "remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Remand may be appropriate, however, " where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The ALJ must "build an accurate and logical bridge" between the record evidence and the ALJ's RFC finding. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*,

227 F.3d 863, 872 (7th Cir. 2000)); *see also Deborah P. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1850, 2019 WL 1936721, at *2 (D.Md. Apr. 30, 2019).

The Fourth Circuit concluded that remand is proper where the ALJ fails to explain why a Plaintiff's "moderate limitation in concentration, persistence, or pace" does not "translate into a limitation in [Plaintiff's] residual functional capacity." *Mascio*, 780 F.3d at 638–39. However, it is not a "categorical rule" that the ALJ must always include the moderate limitation in an RFC; instead, the ALJ must only address the mental limitations in the RFC or provide an explanation for omitting it. *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). In *Shinaberry*, the Fourth Circuit explained that the ALJ at issue, unlike in *Mascio*, addressed plaintiff's disability, "including her moderate limitations in concentration, persistence, or pace," and explained why evidence of the record supported the identified limitation. *Id.* at 122. The ALJ's finding with regard to plaintiff's mental limitation and her RFC were thus "sufficiently explained and supported by substantial evidence in the record." *Id.*

Here, the ALJ failed to link his observations and findings about Plaintiff's moderate difficulties in concentration, persistence, or pace, as well as her physical limitations, to his conclusions about her RFC and ability to work. With regard to Plaintiff's mental impairment, the ALJ noted her symptoms included depressed or constricted affect, impaired attention, concentration, and memory, social withdrawal, depressed mood, as well as, moderate difficulties in concentration, persistence, and pace; however, he then, without explanation, concluded that Plaintiff was capable of understanding and remembering simple instructions, making simple work-related decisions, occasionally dealing with changes in a routine work environment, and occasionally dealing with coworkers and the public. ECF No. 13 at 27–28. The ALJ did analyze Plaintiff's abilities and concluded that her symptoms were "not as intense, persistent, and limiting

as alleged," *id.* at 28, but failed to explain how those abilities, in light of her limitations, supported her "ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *See* SSR 96-8p, 1996 WL 374184, at *7. Therefore, while the ALJ did not fail to consider the moderate difficulties at all as in *Mascio*, he also did not explain how the evidence in the record supported his determination of Plaintiff's mental limitations, as in *Shinaberry*. *See Shinaberry*, 952 F.3d at 122.

Turning then to the ALJ's assessment of Plaintiff's RFC with respect to other limitations, I find that the ALJ's opinion is "lacking in the analysis needed for [the Court] to review meaningfully those conclusions." *Mascio*, 280 F.3d at 836–37. The ALJ noted Plaintiff's symptoms of severely elevated pulmonary artery systolic pressure, dizziness, dyspnea, daytime sleepiness, and shortness of breath, but then concluded that Plaintiff was capable of occasional unprotected heights, moving machinery parts, and occasionally climbing ladders, ropes, and scaffolds. ECF No. 13 at 27. While he identified that Plaintiff can "normally sleep[] off episodes of dizziness" and that she could walk for six minutes with "only a mild degree of functional impairment," he does not explain how such evidence supports the conclusion that Plaintiff is capable of such tasks during a workday and work environment, especially given her above severe limitations that the ALJ failed to analyze further. *Id. See* SSR 96-8p, 1996 WL 374184, at *7. The ALJ also did not resolve the inconsistencies in the record based on his conclusion that Plaintiff was limited to lifting no more than 10 pounds, while also concluding she was capable of light work, requiring lifting up to 20 pounds. ECF No. 13 at 26; *see* 20 C.F.R. § 404.1567(b) (defining light work as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds). As the Fourth Circuit has explained, "[b]ecause [the Court] [is] left to guess about how the ALJ arrived at his conclusions on [Plaintiff's] ability to perform

relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary." *Mascio*, 780 F.3d at 637.

## CONCLUSION

In summation, the Court finds that the ALJ failed to properly evaluate the evidence on record and did not provide substantial evidence to support the finding that Plaintiff was "not disabled" within the meaning of the Act. Therefore, based on the foregoing and pursuant to 42 U.S.C. § 405(g), Plaintiff's Motion for Summary Judgment (ECF No. 17) is GRANTED, Defendant's Motion for Summary Judgment (ECF No. 22) is DENIED, and the decision of the SSA is REVERSED due to inadequate analysis. This case is REMANDED for further proceedings in accordance with this opinion.

Date: 8 October 2021

A. David Copperthite
United States Magistrate Judge